**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **GENUINE ENABLING TECHNOLOGY LLC,**<br><br>            **Plaintiff,**<br><br>    v.<br><br>**NINTENDO CO., LTD. and NINTENDO OF AMERICA INC.,**<br><br>            **Defendants.** | C.A. No.: 1:17-cv-00134-MSG-CJB<br><br>**JURY TRIAL DEMANDED** |

**ANSWERING BRIEF IN OPPOSITION TO NINTENDO OF AMERICA INC.'S
MOTION TO DISMISS OR TRANSFER VENUE TO THE
<u>WESTERN DISTRICT OF WASHINGTON PURSUANT TO § 1406(a)</u>**

Dated: June 13, 2017

Peter D. Shapiro
Christopher M. Gerson
Giancarlo L. Scaccia
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
pshapiro@fchs.com
cgerson@fchs.com
gscaccia@fchs.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Tel: (302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

I. Introduction ..................................................................................................................1

II. Nature and Stage of the Proceedings ...........................................................................2

III. Summary of the Argument............................................................................................3

IV. Statement of Facts.........................................................................................................4

V. Argument ......................................................................................................................6

    A. *TC Heartland* Did Not Address Whether Registering to Do Business in Delaware Establishes Venue There, but Confirmed That the Federal Statute Governing Patent Venue Should be Interpreted Like Other Federal Statutes Governing Venue .....................................6

    B. Although NOA Refuses to Provide Venue-Related Discovery, Publicly Available Information Indicates that NOA Has a Regular and Established Place of Business in Delaware........................................7

    C. NOA Waived its Improper Venue Defense by Registering to Do Business in Delaware .................................................................................10

    D. If the Court Finds No Waiver and No Public Indication of Established Business, Venue-Based Discovery Is Necessary...............................12

VI. Conclusion ..................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*,
   406 U.S. 706 (1972) .................................................................................................................. 3

*Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*,
   130 F.2d 474 (3d Cir. 1942) ................................................................................................ 4, 11

*Hemstreet v. Caere Corp.*,
   C.A. No. 90 C 377, 1990 WL 77920 (N.D. Ill. June 6, 1990) ............................................... 12

*In re Cordis Corp.*,
   769 F.2d 733 (Fed. Cir. 1985) ...................................................................................... 3, 7, 8, 9

*In re: First Solar Derivative Litig.*,
   C.A. No. 12-417-GMS-CJB, 2013 WL 817132 (D. Del. Mar. 4, 2013) ................................. 4

*Johnston v. IVAC Corp.*,
   681 F. Supp. 959 (D. Mass. 1987) ........................................................................................... 9

*Kuehne Chem. Co. v. Adex Int'l, Inc.*,
   2015 WL 1208379 (D.N.J. Mar. 17, 2015) ......................................................................... 3, 12

*McDonnell Douglas Corp. v. Polin*,
   429 F.2d 30 (3d Cir. 1970) ................................................................................................. 3, 12

*MGICorp. v. Kinetic Presentations*,
   718 F. Supp. 334 (D.N.J. 1989) ............................................................................................... 9

*Minnesota Mining & Mfg. Co., v. Johnson & Johnson Prods., Inc.*,
   C.A. No. 4-86-359, 1987 WL 10997 (D. Minn. Jan. 2, 1987) ................................................ 8

*Neirbo v. Bethlehem Shipbuilding Corp.*,
   308 U.S. 165 (1939) ...................................................................................................... 3, 10, 11

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ............................................................................................................ 3, 12

*Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*,
   230 F.2d 511 (3d Cir. 1956) ........................................................................................ 4, 10, 11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   --- S. Ct. ---, 2017 WL 2216934 (2017) ............................................................ 3, 6, 7, 8, 10, 11

**Statutory Authorities**

28 U.S.C. § 1391(c) ................................................................................................................ 7, 8

28 U.S.C. § 1400(b) ................................................................................................................ 6, 7

**I.     INTRODUCTION**

This is a patent-infringement case between Genuine Enabling Technology LLC ("Genuine Enabling") and Nintendo of America Inc. ("NOA") and NOA's Japanese parent, Nintendo Co., Ltd ("NCL") (collectively, "Nintendo").  Genuine Enabling is a Delaware company owned by the patent-in-suit's inventor, Nghi Nguyen.  Mr. Nguyen lives and works in his home, which is located in Downingtown Pennsylvania, a few miles from the Delaware border.  Mr. Nguyen believes that Nintendo's video game systems and controllers infringe his patent, U.S. Patent No. 6,219,730, which claims a novel way to synchronize and encode multiple data streams for communication across a communication link.  NOA markets and sells the accused products on its website, which is accessible every day to every Internet-enabled device in Delaware.  NOA also advertises its accused products on the Internet and on television, including throughout the state of Delaware.  The accused products are on the shelves of Delaware stores, available for sale every day.  NOA is registered to do business in Delaware and has designated an agent to accept service in Delaware.  And NOA has availed itself of Delaware's courts in earlier proceedings, litigating patent-infringement disputes in Delaware.  To say that NOA has a regular and established place of business in Delaware is an understatement.  To say that NOA has used the State of Delaware for its own benefit is also an understatement.  Yet now, when accused of patent infringement by a Delaware company, NOA has alleged that it cannot be sued here.

NOA's motion to dismiss relies on the Supreme Court's recent *TC Heartland* decision to allege that the patent venue statute shields NOA from patent-infringement lawsuits in Delaware.  However, *TC Heartland* makes clear that venue remains proper where a defendant has committed acts of infringement and has a regular and established business.  There is no dispute

that NOA's alleged acts of infringement have occurred in Delaware. And, through its systematic advertising, sales, and presence in Delaware, NOA has a regular and established place of business here. Moreover, *TC Heartland* did not disturb existing Supreme Court precedent, which establishes that by registering to do business in Delaware and appointing an agent for service in Delaware, NOA has waived the privilege of contesting venue here. For each of these reasons, as discussed below, NOA should not be able to avoid patent-infringement lawsuits in Delaware and its motion to dismiss should be denied.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

Genuine Enabling filed its complaint against NOA and NCL on February 8, 2017, accusing NOA and NCL of infringing U.S. Patent No. 6,219,730 ("the patent-in-suit"). (D.I. 1.) The parties agreed to a 90-day extension for NOA and NCL to respond to the Complaint in exchange for NOA accepting service on both Defendants, with service effective as of February 8, 2017. (D.I. 9.) On May 22, 2017, counsel for NOA and NCL informed Genuine Enabling of Nintendo's intent to seek transfer to the Western District of Washington. The parties met and conferred throughout the week of May 25, 2017. (Scaccia Decl.[1], Ex. 1.) As part of the meet-and-confer process, Genuine Enabling sought venue-related discovery from NOA, but NOA refused to provide the requested information. (*Id.*)

On February 8, 2017, Genuine Enabling also filed an action asserting the same patent-in-suit against Sony Interactive Entertainment America LLC and its parent Japanese corporation, Sony Corporation (collectively, "Sony"), also in the United States District Court for the District of Delaware. Sony answered Genuine Enabling's complaint on May 22, 2017 and a proposed

---

[1] For the Court's convenience, the same declarations of Nghi Nho Nguyen ("Nguyen Decl.") and Giancarlo L. Scaccia ("Scaccia Decl.") are submitted in support of both the instant opposition and Plaintiff's opposition to Defendants' alternative motion to transfer pursuant to § 1404.

2

scheduling order is due to be filed in that case on June 23, 2017. (*See* 5/23/2017 Oral Order in *Genuine Enabling Technology LLC v. Sony Corporation et al.*, C.A. No. 17-00135 (D. Del.) (the "Sony Action").)

### III. SUMMARY OF THE ARGUMENT

NOA's motion to dismiss should be denied because venue as to both NOA and NCL is proper.[2,3]

1. First, NOA's extensive targeting and sales in Delaware constitute having a regular and established place of business here. *See In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). NOA clearly has many ties to Delaware—both through traditional sales into Delaware, as well as through online activities. To the extent the Court cannot determine if NOA has a regular and established place of business here, the Court should permit Genuine Enabling to take limited venue discovery from NOA. *See Kuehne Chem. Co. v. Adex Int'l, Inc.*, 2015 WL 1208379, at *1 (D.N.J. Mar. 17, 2015) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978)*; McDonnell Douglas Corp. v. Polin*, 429 F.2d 30 (3d Cir. 1970).

2. Second, under the Third Circuit's interpretation of Supreme Court precedent, by registering to do business and appointing an agent for service of process in Delaware, NOA has

---

[2] NCL, NOA's Japanese parent company, has not contested that venue is proper. (*See* Generally, NOA's Opening Br.) Nor could it. Notably, *TC Heartland* does not apply to foreign companies. Instead, the Supreme Court made clear that it did not "express any opinion on this Court's holding in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S. Ct. 1936, 32 L. Ed. 2d 428 (1972) (determining proper venue for foreign corporation under then existing statutory regime)." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, --- S. Ct. ---, 2017 WL 2216934, at *7 n. 2 (2017). In *Brunette Machine Works*, the Supreme Court confirmed "that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." 406 U.S. at 714. Nintendo Co., Ltd. is a Japanese corporation. (NCL's Answer at ¶ 4.) Therefore, under established Supreme Court law, NCL cannot dispute that venue in Delaware is proper.

[3] NOA and NCL have also filed a motion to transfer the case to the Western District of Washington. (D.I. 19.) Genuine Enabling has addressed that motion in a separately filed opposition brief.

submitted to venue in the District of Delaware. *Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939). NOA argues that *Neirbo* should not apply to patent cases, but has cited no Third Circuit authority in support of this argument. As discussed below, there is clear Third Circuit precedent and Delaware District Court guidance to the contrary, which contemplates that *Neirbo* applies to both patent cases and federal-question cases more generally. *See Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*, 230 F.2d 511 (3d Cir. 1956) (finding an explicit waiver identical to NOA's will apply to venue for any federal statute); *In re: First Solar Derivative Litigation*, C.A. No. 12-417-GMS-CJB, 2013 WL 817132 (D. Del. Mar. 4, 2013) (in which Judge Burke discussed *Neirbo* and its progeny in detail in deciding whether it applied to a federal-question case); *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474 (3d Cir. 1942) (citing *Neirbo* with the clear indication that *Neirbo* applied to patent cases).

## IV. STATEMENT OF FACTS

On February 8, 2017, Genuine Enabling filed its Complaint in this action against NOA and NCL. (D.I. 1) The patent-in-suit relates to the transmission of multiple different types of data streams across a communication link. Mr. Nguyen devised a novel way to synchronize and encode this data and believes NOA and NCL's video game products, such as Wii controllers, use his patented idea.

Genuine Enabling Technology LLC is a Delaware entity. (Nguyen Decl. at ¶ 3.) Genuine Enabling is owned by Nghi Nguyen, the inventor of the patent-in-suit. (*Id.* at ¶¶ 2, 4.) Mr. Nguyen lives in Downingtown Pennsylvania, which is located less than 30 miles from the Wilmington Courthouse. (*Id.* at ¶¶ 1, 10.) No other Federal Courthouse is closer to Mr. Nguyen than the Delaware Court. (Scaccia Decl. at ¶ 4.) Mr. Nguyen is the sole inventor on the patent-in-suit and the sole owner of Genuine Enabling. (Nguyen Decl. at ¶¶ 2, 4.) He conceived of the

invention while living in Downingtown, Pennsylvania. (*Id*. at ¶¶ 5, 7.) He also built a prototype of the invention while living there and his commercialization efforts took place at his home and, for a brief period, in his home country of Vietnam. (*Id*. at ¶¶ 6, 9.) Mr. Nguyen still has documents that relate to the conception, reduction to practice, and commercialization of the invention, and the prosecution of the paten-in-suit. (*Id*. at ¶¶ 5, 6, 8.) Mr. Nguyen still lives in Downingtown. (*Id*. at ¶ 1.)

NOA has not provided any venue-related discovery to Genuine Enabling. (Scaccia Decl., Ex. 1.) However, based on Genuine Enabling's own independent investigation, Genuine Enabling understands that NOA sells the accused products throughout the country, including in Delaware. (D.I. 1 at ¶¶ 4, 7, 10-12.) Importantly, NOA is registered to do business in the State of Delaware, has appointed an agent for service in Delaware, and has availed itself of this forum in previous patent-infringement lawsuits. (Scaccia Decl., Ex. 2-7.) Moreover, NOA operates a website, Nintendo.com, which is always available to every Internet-enabled device in Delaware and, upon information and belief, is regularly accessed by NOA's customers within Delaware. (Scaccia Decl., Ex. 13; Scaccia Decl. at ¶ 17.) This website not only advertises the accused products in Delaware, but also allows Delaware customers to purchase the accused products directly from Nintendo. (Scaccia Decl., Ex. 8.) Furthermore, retail stores throughout the State of Delaware (such as Walmart, GameStop, and Best Buy, among others) sell the accused Nintendo products. (Scaccia Decl., Ex. 9-11.) These stores have shelf space for these products in Delaware, which necessarily includes the products themselves and other literature about the products. Finally, Nintendo advertises its products in Delaware through at least television and on the Internet. (Scaccia Decl. at ¶ 18.)

Because additional relevant facts to the question of proper venue are known only to

NOA, as part of the meet-and-confer process, Genuine Enabling asked NOA if it would be willing to provide limited venue-related discovery. (Scaccia Decl., Ex. 1.) To date, NOA has refused, because doing so would provide additional evidence that venue in this District is proper. (*Id.*) Without discovery, Genuine Enabling cannot know the full extent of NOA's contacts and activities within Delaware. For example, NOA has not indicated how many NOA employees, such as salespeople, travel to Delaware and how frequently they do so. Genuine Enabling also does not know the volume of accused Nintendo products that have been sold in Delaware either directly by NOA or through third parties. Nor is Genuine Enabling privy to other facts presumably known to NOA, such as how often Nintendo's website (which offers the accused products for sale) is accessed from within the State of Delaware or how many Delaware users pay to access Nintendo networks from Delaware for online gaming and/or content. These facts would likely further support a finding that NOA has a "regular and established place of business" within Delaware.

## V. ARGUMENT

### A. *TC Heartland* Did Not Address Whether Registering to Do Business in Delaware Establishes Venue There, but Confirmed That the Federal Statute Governing Patent Venue Should be Interpreted Like Other Federal Statutes Governing Venue

Venue for a patent infringement action is proper in the "judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland*, 2017 WL 2216934, at *3. The recent Supreme Court case *TC Heartland* interpreted the meaning of "where the defendant resides" to mean the defendant's State of incorporation. *Id.* at *8. Although *TC Heartland* adopted a more narrow meaning of "reside[nce]" than recent Federal Circuit jurisprudence, *TC Heartland* explicitly did not address: (1) venue with respect to foreign

6

corporations, incorporated outside the United States; (2) what constitutes "a regular and established place of business;" and (3) whether registering to do business in the at-issue state waives the right to contest venue there.  Indeed, in the Court's analysis, it specifically pointed out that the petitioner in *TC Heartland* was a domestic company, not a foreign company, and, unlike NOA, was <u>not</u> registered to do business in Delaware, the at-issue forum in that case.  *Id.* at *3.

Importantly, *TC Heartland* confirmed that, for patent cases, venue is determined by federal statute, just like any other federal-question case.  28 U.S.C. § 1391(c) generally governs venue for federal-question cases.  Then other sections of Title 28 govern venue for specific types of federal-question cases.  28 U.S.C. § 1400(b) governs for patent cases.[4]  Thus, to the extent venue can be waived in federal-question cases, any rule regarding waiver should apply equally to patent cases as to all other federal-question cases.

B.    **Although NOA Refuses to Provide Venue-Related Discovery, Publicly Available Information Indicates that NOA Has a Regular and Established Place of Business in Delaware**

Venue is proper here because NOA "has committed acts of infringement and has regular and established place of business."  28 U.S.C. § 1400(b).[5]  Prior to *TC Heartland*, very few challenges were made to venue in patent cases so only a few cases from the Federal Circuit have interpreted what it means to have a "regular and established place of business."  But under the guidance from those cases, NOA clearly has a regular and established place of business in Delaware.  In the seminal case that has interpreted this language from 28 U.S.C. § 1400(b), *In re*

---

[4] As other examples, § 1401 governs a stockholder's derivative action and § 1403 governs venue for eminent domain cases.

[5] There is no dispute that NOA has committed acts of alleged infringement in Delaware. (D.I. 15 at ¶ 7.)

7

*Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985), the Federal Circuit rejected the contention that "regular and established place of business" requires a fixed, physical location, and found that "the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there." *Id.* at 737; *see also Minnesota Mining & Mfg. Co., v. Johnson & Johnson Prods., Inc.*, C.A. No. 4-86-359, 1987 WL 10997, at *3 (D. Minn. Jan. 2, 1987) ("The absence of a physical location bearing a defendant's name should not foreclose venue under § 1400(b) where the defendant's presence in the forum is 'permanent and continuous.'").

In *In re Cordis*, the Federal Circuit specifically found that the company, Cordis, had a regular and established place of business in Minnesota even though Cordis was not registered to do business there, and it did not have a bank account, an office, or any property within that state. 769 F.2d at 735. Instead, it was enough that two Cordis salespeople had home offices in Minnesota, kept some Cordis documents, paperwork, and products there, and acted as technicians there. *Id.*

Here, publicly available facts confirm that NOA's presence in Delaware far exceeds Cordis' presence in Minnesota. As an initial matter, NOA, unlike Cordis (and unlike TC Heartland), is registered to do business in the forum. *Id.* at 735; *TC Heartland*, 2017 WL 2216934, at *3. Moreover, NOA operates a website, Nintendo.com, which is always available to every Internet-enabled device in Delaware and, upon information and belief, is regularly accessed by NOA's customers within Delaware. (Scaccia Decl. at ¶ 17.) This website not only advertises the accused products in Delaware, but also allows Delaware customers to purchase the accused products directly from Nintendo. (Scaccia Decl., Ex. 8.) Furthermore, retail stores throughout the state of Delaware (such as Walmart, GameStop, and Best Buy, among others) sell

8

the accused Nintendo products.  These stores have shelf space for these products in Delaware, which necessarily includes the products themselves and literature about the products.  (Scaccia Decl., Ex. 9-11.)   Finally, Nintendo advertises its products in Delaware through at least television and on the Internet.  (Scaccia Decl. at ¶ 18. Ex. 8.)  Taken as a whole, NOA has an established regular business in Delaware, through systemic advertising, direct access to Delaware customers through the Nintendo.com website, and sales through Nintendo.com and through retail stores throughout the State.  This level of business within Delaware far exceeds the two salespeople in *In re Cordis* that the Federal Circuit found to be enough for venue to be proper.  769 F.2d at 737.

To support its argument that it should not be sued for patent infringement in Delaware, NOA cites to a handful of district court cases, none of which are from Delaware, and few of which post-date *In re Cordis*.  (NOA's Opening Br. at 6-7.)  None of the cases NOA cites are precedential or binding on this Court.  And none have analogous facts.  For example, none address whether a website, accessed every single day by scores of citizens in Delaware, constitutes a regular and established place of business.  And none of Nintendo's cases address whether repeated and continuous sales of products within a district including through a Defendant's own website and through numerous retail locations constitutes a regular and established place of business either.  (*Id.*)  In sum, the cases NOA cites do not change the fact that under *In re Cordis*, what is publicly known about NOA's presence in Delaware is sufficient to establish that NOA has a regular and established place of business here.[6]

---

[6] Two of the cases NOA cites postdate *Cordis*:  (1) *Johnston v. IVAC Corp.*, 681 F. Supp. 959 (D. Mass. 1987) and (2) *MGICorp. v. Kinetic Presentations*, 718 F. Supp. 334 (D.N.J. 1989).  In each case, the defendant's presence in the at-issue forum was found to be less than Cordis' two salespeople in Minnesota.  In *Johnston*, the Massachusetts court noted that the defendant's salespeople were essentially mere solicitors and that all sales orders, shipping, and payment were

## C. NOA Waived its Improper Venue Defense by Registering to Do Business in Delaware

Unlike the defendant in *TC Heartland*, NOA has waived its privilege to challenge venue because NOA has registered to do business in Delaware and has appointed an agent for service of process in Delaware. (Scaccia Decl., Ex. 7.); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939).

NOA does not contest in its opening brief that the *Neirbo* case found that registering to do business in Delaware amounts to a waiver of the privilege to contest venue. (*See generally* NOA Opening Br.) NOA also does not contest that it is registered to do business in Delaware and has appointed an agent for service of process in Delaware. (*Id.*) The only point of contention is whether *Neirbo* applies to patent cases. NOA cites a handful of older cases to argue that *Neirbo* does not apply to patent cases. (*Id.* at 8-10.) However, and importantly, none of the cases that NOA cites is from the Third Circuit, the Federal Circuit, or the District of Delaware. (*Id.*)

This is telling because Third Circuit jurisprudence confirms that *Neirbo does* apply to patent cases and, therefore, under Third Circuit law, NOA has consented to venue in Delaware. In particular, according to the Third Circuit, *Neirbo* establishes that "when a foreign corporation, obeying a requirement of state law, files an actual designation and consent empowering a statutory agent to accept for it legal process issued within the state, its action may amount to an effective agreement to submit to suit, at least on causes of action arising under local law, not only in state courts but also in federal courts with subject matter jurisdiction, despite *any* defect

---

handled elsewhere. 681 F. Supp. at 964. Although the defendant was registered to do business in Massachusetts, the court did not address whether registration waived venue. *Id.* In *MGICorp.*, the defendant's presence was limited to one salesperson who spent some time in New Jersey, but could not consummate sales. 718 F. Supp. at 340. Neither the defendant in *Johnston* nor *MGICorp.* was alleged to have the systemic presence NOA does in Delaware.

10

of federal statutory venue which might otherwise be asserted." *Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*, 230 F.2d 511, 513 (3d. Cir. 1956) (emphasis added). Importantly, the Third Circuit also noted that "it [was] the teaching of [*Neirbo* and its progeny] that there is no federal rule or overriding federal policy which limits the effectiveness of this type of consent in its application to federal litigation." *Id.* As confirmed by the *TC Heartland* decision, venue in patent cases, just like venue in any other federal litigation, is governed by a federal statute, and therefore, any rule regarding waiver (including the rule established in *Neirbo*) should apply equally to patent cases as to all other federal-question cases.[7]

In *In re: First Solar Derivative Litigation*, C.A. No. 12-417-GMS-CJB, 2013 WL 817132 (D. Del. Mar. 4, 2013), Judge Burke discussed *Neirbo* and its progeny in detail in deciding whether it applied to a federal question case. Although Judge Burke decided it did not apply to those particular facts, it was only because the waiver there was not explicit. Regardless, Judge Burke clearly contemplated that *Neirbo* applied to federal statutes. Judge Burke expressly noted that *Neirbo* and its progeny consistently establish that "a person's voluntary act of 'actual consent' to being sued in a state, evidenced by a person's express designation of an agent for service of process . . . operate[s] to waive the federal venue privilege." *Id.* at *5-6 (noting that waiver has been found where, as here, an agent for service of process was actually appointed by the party in question via written designation).

Also, in *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474 (3d Cir. 1942), a Third Circuit case citing *Neirbo*, the Appellate Court clearly understood that *Neirbo* applied to patent cases as is plain from the lengthy discussion about it. In interpreting the scope of venue

---

[7] Further, all of the cases cited in NOA's Opening Brief predate *TC Heartland* and are inconsistent with its central premise because they suggest that the patent venue statute should be treated differently than other federal venue statutes, and therefore is not subject to waiver under *Neirbo*.

11

for declaratory judgment actions by or against patent owners, the Third Circuit found that *Neirbo* "*enlarge[d] the venue of suits against a corporate patent owner . . . to states in which it had appointed a local agent for service of process.*" *Id.* at 476 (emphasis added).

In sum, these cases demonstrate that, by affirmatively registering to do business in Delaware and appointing an agent for service of process in Delaware, NOA has waived its ability to contest venue in the District of Delaware for federal-question cases, including patent cases.

**D.     If the Court Finds No Waiver and No Public Indication of Established Business, Venue-Based Discovery Is Necessary**

In the event this Court finds that NOA has not waived its ability to assert improper venue as a defense and that publicly available information about NOA is insufficient to confirm NOA has a regular and established place of business here, Genuine Enabling respectfully requests an opportunity to conduct limited discovery to prove that the exercise of venue in this District is proper.  Venue discovery has been ordered by courts where, as here, the question of proper venue turned on whether the defendant's ties to the district established a regular and established place of business.  *See Kuehne Chem. Co. v. Adex Int'l, Inc.*, Civ. No. 14–05630-WJM, 2015 WL 1208379, at *1 (D.N.J. Mar. 17, 2015) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 31 (3d Cir. 1970).

As described above, as part of the meet-and-confer process, Genuine Enabling asked NOA to provide venue-relate documents, but NOA refused.  *See* Section IV, *supra*.  Genuine Enabling respectfully requests that, if necessary, the Court order NOA to provide documents sufficient to show NOA's sales into Delaware including through any of its own websites and the activities of NOA's sales representatives in Delaware.  This information would aid the Court in determining whether venue is proper.  *See Hemstreet v. Caere Corp.*, C.A. No. 90 C 377, 1990 WL 77920, at *1 (N.D. Ill. June 6, 1990) ("[A] court must consider the totality of the defendant

12

corporation's activities within the district to determine if the corporation conducts its business within the district 'through a permanent and continuous presence'.") (internal citations omitted).

## VI. CONCLUSION

For the foregoing reasons, Genuine Enabling respectfully requests that the Court deny NOA's Motion to Dismiss or Transfer, or, in the alternative, order NOA to provide the venue-related discovery described above.

Dated: June 13, 2017

Peter D. Shapiro
Christopher M. Gerson
Giancarlo L. Scaccia
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
pshapiro@fchs.com
cgerson@fchs.com
gscaccia@fchs.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Tel: (302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff*